UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

AT LOUISVILLE

ERNEST NEEDLER,            PLAINTIFF

v.            CIVIL ACTION NO. 3:13-CV-781-CRS

COCA-COLA REFRESHMENTS USA, INC.            DEFENDANT

Memorandum Opinion

I.     Introduction

Coca-Cola Refreshments USA, Inc. ("Coca-Cola") moves for summary judgment on Ernest Needler's age discrimination claims. Coca-Cola also moves to strike and for discovery sanctions.

For the reasons below, the Court will grant summary judgment to Coca-Cola on all claims. The Court will dismiss the claims with prejudice.

II.     Summary judgment standard

A party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* The Court must draw all factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Lewis v. Phillip Morris, Inc.*, 315 F.3d 515, 533 (6th Cir. 2004) (internal quotation marks omitted).

III.  Undisputed facts

During the early 2000s, Coca-Cola instituted a new logistics system for delivering its products. Under the new logistics system, Coca-Cola categorized drivers as either "bulk" drivers or Order Fulfillment System ("OFS") drivers. OFS drivers had daily routes and delivered small- and medium-sized deliveries to individual stores. OFS drivers worked Monday through Friday starting at 7am. When OFS drivers worked weekends, they were paid overtime.

Bulk drivers continued their traditional role of driving the big red Coca-Cola semis and delivering large quantities to warehouses and stores. Bulk drivers worked Tuesday through Sunday, with a rotating Saturday schedule. In times of decreased demand, Coca-Cola did not schedule bulk deliveries, but bulk drivers could pick up OFS routes.

Coca-Cola's Fleet Management Policy says that Coca-Cola may terminate an employee who commits a "Class D" offense. Fleet Mgmt. Pol'y 10, ECF No. 60-10. A "Class D" offense is one in which the Coca-Cola driver "probably was a contributing factor to the offense." *Id.* Reckless driving is one example of a Class D offense. *Id.*

In 1979, the plaintiff, Ernest Needler, began work as a truck driver for Coca-Cola. During the relevant time period, Needler was a bulk driver. He testified that the bulk driver position was the preferred position at Coca-Cola, and he did not want to do OFS work. Needler Dep. 355 – 56, ECF No. 44-1. He rejected the opportunity to pick up OFS work. *Id.* at 356.

2

On April 5, 2011, Needler was driving his Coca-Cola semi southbound on Interstate 65 in southern Indiana near Sellersburg. Jaclyn K. McRoy, who is not a party to this case, was driving a 2002 Ford F-150 pickup truck.

McRoy merged onto I-65 south from the Henryville ramp (exit 19) on the right side of the highway. Ind. Officer's Std. Crash Rep. 2, ECF No. 60-4. McRoy saw traffic stopped in front of her so she was travelling about ten miles per hour. *Id.* Needler testified that he saw McRoy "sitting there" or "going maybe creeping speed, like five or ten mile[s] an hour." Needler Dep. 157. He could not stop, and he hit McRoy's truck. *Id.* at 156 – 58.

The impact sent McRoy's truck "across the left lane of I-65 south, into the center strand barrier and her vehicle flipped over the barrier in the grass median and then came to rest on its wheels in the left lane of northbound I-65." Ind. Officer's Std. Crash Rep. 2. Needler testified that the crash was "more serious than I thought it was," and the damage to McRoy's truck was "severe." Needler Dep. 241 – 45. After the crash, Emergency Medical Services transported McRoy to the hospital for treatment.

The police report identifies Needler as the "primary cause" of the accident for "unsafe speed." Ind. Officer's Std. Crash Rep. 1. The police report does not assign any "driver contributing circumstances" to McRoy. *Id.* An officer issued Needler a ticket at the scene, charging him with violating Indiana Code 9-21-5-1: "**SPEED UNREASONABLE UNDER THE CIRCUMSTANCES/TOO FAST**."[1]

---

[1] The statute reads: "A person may not drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions, having regard to the actual and potential hazards then existing. Speed shall be restricted as necessary to avoid colliding with a person, vehicle, or other conveyance on, near, or entering a highway in compliance with legal requirements and with the duty of all persons to use due care." Ind. Code § 9-21-5-1.

3

The area where the crash occurred was in a construction zone with a posted speed limit of 45 miles per hour. Needler Dep. 281. The construction zone signs had been posted for six months. *Id.* at 154. Needler knew the speed limit was 45 miles per hour in the construction zone, but "Most people went with the flow of traffic, you know." *Id.* at 280. Also, "[t]here were 3 message boards in the median of the Interstate warning traffic that the right lane was closed at the 16 [mile marker] and to watch for slowed or stopped traffic ahead." Ind. Officer's Std. Crash Rep. 2.

Following an internal review, Coca-Cola fired Needler. His dismissal letter, dated May 3, 2011, says he was dismissed because he committed a "Class D" offense. Corrective Action Form, ECF No. 60-2.

In a separate lawsuit, McRoy sued Coca-Cola and Needler for her personal injuries and property damage from the crash. *Jaclyn McRoy v. Coca-Cola Refreshments USA, Inc.*, Clark County Superior Court, IN, 10D02-1110CT-167. Coca-Cola agreed to defend Needler in that action. Coca-Cola settled with McRoy in that action.

IV. Coca-Cola's motion to strike and for sanctions

On July 16, 2015, Needler's attorney filed a timely response to Coca-Cola's motion for summary judgment. Pl.'s 1st Resp. Mot. Summ. J. 1, ECF No. 63 ("Pl.'s 1st Resp."). Needler's attorney attached six exhibits to the first response, totaling twenty pages. *See* Pl.'s 1st Resp. Ex. 2 – 6, ECF No. 63-2 – 63-6.

On July 17, 2015, a day after the deadline, Needler's attorney filed a second response to Coca-Cola's motion for summary judgment without leave of court. Pl.'s 2nd Resp. Mot. Summ. J. 1, ECF No. 64 ("Pl.'s 2nd Resp."). Needler attached one exhibit to the second response, totaling one hundred forty-two pages. *See* Pl.'s 2nd Resp. Ex. 1, ECF No. 64-1 ("Exhibit 1").

4

Exhibit 1 includes a detailed summary of McRoy's medical history prepared by attorney John F. Carroll's law firm. Carroll represented Needler in McRoy's lawsuit against him. McRoy's unredacted date of birth appears on page eighteen of Exhibit 1. *See id.* at Page ID# 803.

The Court finds that Needler's attorney violated Federal Rule of Civil Procedure 5.2[2] in filing McRoy's unredacted date of birth in the Electronic Case Filing ("ECF") System. The Court will strike the page with McRoy's unredacted date of birth.

The Court will disregard Needler's second response and Exhibit 1, which are subject to being stricken as untimely, because Needler's attorney filed those documents after the deadline and without leave of court.

In light of the disposition explained below, the Court need not address Coca-Cola's argument regarding discovery sanctions or its request for attorneys' fees.

V. Needler's wrongful termination claim

The Kentucky Civil Rights Act prohibits an employer from discharging an individual because of the individual's age over forty. Ky. Rev. Stat. § 344.040(1)(a). Kentucky courts interpret the Kentucky Civil Rights Act consistent with Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005). Under the Age Discrimination in Employment Act, the plaintiff must prove by a preponderance of the evidence that "age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin'l Servs.*, 129 S.Ct. 2343, 2351 (2009).

---

[2] Federal Rule of Civil Procedure 5.2 says, in relevant part:
(a) **Redacted filings**. Unless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's Social Security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number, a party or nonparty making the filing may include only: ...
(ii) The year of the individual's birth.

5

Needler argues, "Could that [McRoy] have engaged in insurance fraud by cutting in front of Needler & slamming on her breaks while simultaneously trying to end her own life & thus leave her heirs with a sizable lawsuit against a semi-truck insurance carrier? The evidence tends to lean toward that theory." Pl.'s 1st Resp. 6 – 7. Needler has not offered *any* evidence, other than the fantastic speculation he offered in his deposition, in support of this incredulous theory. Without evidence, this is inappropriate. *See Lewis*, 355 F.3d at 533.

A. Direct evidence

A plaintiff may offer direct or circumstantial evidence of age discrimination. "Direct evidence is evidence that 'proves the existence of a fact without requiring any inferences.'" *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc).

B. Whether Needler has produced direct evidence of discrimination

Needler argues that Coca-Cola fired him because of his age. Pl.'s 1st Resp. 3. Needler offers a statement purportedly made by a manager at Coca-Cola as direct evidence of age discrimination. In his deposition, Needler testified that someone at Coca-Cola said in a meeting,

> I'm going to be honest with you, they just want younger people in here, you know, they want somebody that looks good, makes a public image, makes Coca-Cola look good, you know, better looking, you know, people. They don't want old farts out there delivering.

Needler Dep. 288. However, Needler did not "know whether it was Van Jarrett or who it was," who made the statement. *Id.* at 392. He could not remember what year the statement occurred, if the statement occurred within close proximity to his firing, or who else was in the room when it was said. *Id.* at 288 – 90.

A statement by an opposing party is not hearsay if it "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2).

Here, Needler has not shown the statement was made by Coca-Cola's agent or employee because Needler was unable to identify who made the statement. He has not shown that the statement occurred while the employer-employee relationship existed because he could not point to any details as to when it happened or even what year it occurred. Even assuming Van Jarrett, a manager at Coca-Cola, made the statement, Needler was unable to point to what year Van Jarrett made the statement, if the statement occurred in close proximity to when Needler was fired, or who else was in the room when it happened. *Id.* at 288 – 90. Without any specifics that would suggest that Rule 801(d)(2) applies, this statement cannot qualify as non-hearsay. Instead, the statement is inadmissible hearsay, and the Court cannot consider hearsay evidence on summary judgment. *See Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999).

Thus, without direct evidence of age discrimination, Needler must rely on circumstantial evidence under the familiar *McDonnell Douglas* burden-shifting framework. *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538 (6th Cir. 2002); *see also*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

### C. Wrongful termination prima facie standard

A prima facie case of age discrimination requires the plaintiff to show:

(1) He was a member of the protected class, (2) he suffered an adverse employment action, (3) he was otherwise qualified for the position, and (4) he was replaced by a substantially younger employee, or additional evidence shows that the employer was motivated by age.

7

*Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014). Alternatively, a plaintiff may prove the fourth element by showing that "similarly-situated, non-protected employees were treated more favorably." *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 511 (6th Cir. 2004).

   D. <u>Whether Needler has established a prima facie case of age discrimination</u>

  Here, the parties agree that Needler can meet the first three elements because he was over the age of forty, he suffered an adverse employment action when he was fired, and he was otherwise qualified to be a bulk driver with his thirty-one years of experience.

  Coca-Cola argues that Needler cannot establish a prima facie case because he cannot show he was replaced by a substantially younger employee or offer additional evidence showing that Coca-Cola's decision to fire him was motivated by age. *See Deleon*, 739 F.3d at 918. Coca-Cola points to its discovery response: "Without waiving any objection, Coca-Cola states that no one was hired or promoted to replace Mr. Needler in the position of Bulk Driver, nor was Mr. Needler's position converted to an OFS Driver role." Def.'s Resp. Interrog. 5, ECF No. 60-17. Needler did not dispute this fact. Therefore, there is no genuine issue of material fact regarding whether Needler was replaced by a substantially younger employee—he was not.

  Additionally, Coca-Cola argues that Needler cannot establish a prima facie case because he cannot show that Coca-Cola treated any similarly situated employees more favorably than Needler. Coca-Cola points to its review of the drivers at the Louisville Service Center where Needler worked. Def.'s Mem. Supp. Mot. Summ. J. 9, ECF No. 60-1. Coca-Cola argues that the spreadsheet shows that Needler was the only driver who had a Class D accident, and two of the other drivers who also had accidents were over the age of forty. *Id.* Needler did not dispute the spreadsheet.

8

Needler testified, "There was people that had wrecks that worked there, pretty much they didn't fire them or get rid of them." Needler Dep. 163. At best, Needler testified that Coca-Cola driver Mike Hagan had a "wreck, two vehicles got destroyed, and then he was off work for a long period of time." *Id.* at 272. Needler admitted that he had no personal knowledge of this incident, and he even described what he knew as "hearsay" from other employees. *Id.* He also testified that Lonnie Wehimiller, a Coca-Cola salesperson, had a wreck where "he hit somebody in the side at a caution light." *Id.* at 452. Needler considered Wehimiller's wreck worse than his because more than one person had been hospitalized. *Id.* at 455.

These two accounts do not show that Coca-Cola treated similarly-situated employees outside the protected class more favorably than Needler. Needler did not testify as to whether Wehimiller or Hagan were members of the protected class: individuals over the age of forty. Thus, there is no genuine issue of material fact regarding whether similarly-situated employees outside the protected class were treated more favorably than Needler—he has not shown that the individuals he alleges were similarly-situated to him were outside his protected class.

Given that Needler has shown no evidence that Coca-Cola replaced him with an individual outside the protected class, and given that Needler has shown no evidence that Coca-Cola treated a similarly-situated individual outside the protected class more favorably than him, the Court concludes that Needler has not met his burden of establishing a prima facie case of wrongful termination age discrimination.

The Court will grant summary judgment to Coca-Cola on Needler's wrongful termination age discrimination claim.

VI. Needler's disparate impact claim

9

The Kentucky Civil Rights Act prohibits an employer from discriminating against an individual "with respect to compensation, terms, conditions, or privileges of employment" because of the individual's age over forty. Ky. Rev. Stat. § 344.040(1)(a).

Needler's complaint does not explicitly allege a disparate impact claim. The complaint alleges that Coca-Cola scheduled "older" drivers "as needed" with the work week beginning on Tuesday. Compl. ¶ 13. In contrast, "Younger drivers were placed on a set schedule and were more likely to receive over-time opportunities." *Id.* at ¶ 12. Coca-Cola argues that Needler cannot make a prima facie case of disparate impact age discrimination because he has not identified a specific challenged employment practice, and he cannot prove that the practice had an adverse impact on a protected class through relevant statistical analysis. Def.'s Mem. 12.

The Court need not address these arguments because the Court finds, *sua sponte*, that Needler lacks standing to bring a disparate impact age discrimination claim.

> In order to establish constitutional standing to sue under Title VII, a plaintiff must show that he was 'personally injured by the defendant's alleged discrimination and that his injury will likely be redressed by the requested relief.' In Title VII cases, the plaintiff must merely, at the summary judgment stage, present some proof (for example, an affidavit) demonstrating that he was injured by an alleged illegal practice.

*Phillips v. Cohen*, 400 F.3d 388, 396 (6th Cir. 2005) (citing *Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 668 (7th Cir. 1996)); *see also*, *Yeschick v. Mineta*, 2006 WL 2794795 *1, *3 (N.D. Oh. 2006) (applying *Phillips* standing rule to Age Discrimination in Employment Act claim), *rev'd on other grounds*, 521 F.3d 498, 499 (6th Cir. 2008). The plaintiff must "demonstrate either that he or she was denied an employment opportunity because of a practice prohibited by the statute; or that he or she was qualified for the opportunity sought and was denied it and therefore, by inference, was subjected to discrimination." *Phillips*, 400 F.3d at 397.

Needler has not met his burden of presenting "some proof" that Coca-Cola's allegedly discriminatory scheduling practice personally injured him. He has not demonstrated that he was denied an employment opportunity because of Coca-Cola's scheduling practice. Nor has he demonstrated that he was qualified for an opportunity, denied the opportunity, and therefore, by inference, was subjected to impermissible age discrimination. Instead, he testified that he did not want to do OFS work because being a bulk driver is preferable, Needler Dep. 356, and he turned down the opportunity to pick up OFS work. *Id.* at 48 – 49.

Needler has failed to establish constitutional standing to sue for disparate impact age discrimination because he has not shown that Coca-Cola's allegedly discriminatory scheduling practice personally injured him.

The Court will grant summary judgment to Coca-Cola on Needler's disparate impact age discrimination claim.

VII. Conclusion

The Court will strike the page with McRoy's unredacted date of birth (Page ID# 803) from the record.

The Court will grant summary judgment to Coca-Cola on all claims.

The Court will dismiss the claims with prejudice. The Court will enter an order in accordance with this opinion.

March 29, 2016

**Charles R. Simpson III, Senior Judge**
**United States District Court**

11